## ENVIRONMENT

**AUTHORITY TO ADOPT LOW EMISSIONS VEHICLE STANDARDS**

March 3, 1993

*The Honorable Robert Perciasepe*
*Secretary of the Environment*

You have asked our opinion whether the State is prohibited by federal law from adopting certain motor vehicle emission standards. Specifically, you ask whether a provision in the federal Clean Air Act that allows a state to adopt vehicle emission standards identical to those of California authorizes Maryland to adopt California's low emissions vehicle ("LEV" or "tailpipe") standards without also adopting California clean fuel standards.

For the reasons set forth below, we conclude that Maryland may adopt the California LEV standards without adopting California's clean fuel standards.[1]

## I

### Background

In the 1970 amendments to the federal Clean Air Act, 42 U.S.C. §§7401 *et seq.* (the "Act"), Congress directed the Administrator of the United States Environmental Protection Agency to develop national ambient air quality standards ("NAAQS") for designated pollutants. Additionally, each state must develop a state implementation plan setting forth the control strategies that it will use to bring its air quality into compliance with the NAAQS and to maintain that air quality in the future. 42 U.S.C. §7410.

---

[1] Our conclusion is consistent with a letter of advice to Susan S.G. Wierman, Acting Director, Air Management Administration, from Assistant Attorney General Ann Marie DeBiase (October 19, 1992).

Motor vehicles are a major source of three pollutants: carbon monoxide, hydrocarbons, and nitrogen oxides. States are especially concerned with ground level ozone, which is created when nonmethane hydrocarbons react with nitrogen oxides under certain atmospheric conditions. Ozone is a significant respiratory irritant that can cause serious health problems, particularly among the young, the elderly, and those who suffer from bronchitis, emphysema, and asthma.

Under the Act, the EPA sets NAAQS for ozone, and every state must ensure that its air meets that standard. Additionally, the 1990 amendments to the Act mandate more stringent reduction of ozone precursors where the ozone NAAQS had not been attained. 42 U.S.C. §7511a. As we understand it, motor vehicles are among the most promising targets for these reductions. The 1990 amendments to the Act also created a regional grouping among eleven states, including Maryland, to deal with ozone problems. 42 U.S.C. §7511c(a). This group of states is known collectively as the Northeast Ozone Transport Region ("NEOTR"). Maryland, like the other NEOTR states, is currently evaluating strategies to reduce ozone and must soon make commitments to EPA in the form of amendments to its Clean Air Act implementation plan.

As explained in more detail below, states are generally prohibited from adopting tailpipe emission standards for motor vehicles. However, §177 of the Act permits states to "adopt and enforce ... standards relating to control of emissions ... if such standards are identical to the California standards for which a waiver has been granted ...." 42 U.S.C. §7507. Ten of the NEOTR states, including Maryland, have agreed to pursue adoption of California's stringent low emission vehicle standards as a part of a regional strategy to reduce ozone. However, California has not only adopted LEV standards but has also proposed clean fuel standards.

Briefly, the California program can be described as follows: Under its LEV requirements, California has set standards for four new types of vehicles that will be phased in over a 10 year period. These vehicle types represent progressively lower emission technologies. Beginning with model year 1994, manufacturers will have to certify certain percentages of their vehicles to meet standards for transitional low-emission vehicles, low-emission vehicles, ultra-low-emission vehicles, and zero-emission vehicles.

The standards require a phased-in introduction of the vehicles starting in model year 1994.  The manufacturer must meet a fleet average standard for vehicles that are introduced into California each year.  The manufacturer can satisfy that standard by certifying any combination of vehicle types.  California tailpipe standards were approved by the EPA on January 7, 1993.

The clean fuels provisions in the California regulations go a significant step further.  Under the LEV requirements, manufacturers may certify their vehicles using clean fuels.  If a vehicle is certified with a clean fuel, the only way to insure maximum benefit from the use of that vehicle is to provide for the availability of the clean fuel.  The California clean fuel regulations are designed to achieve the widespread availability of those fuels used by manufacturers to certify their vehicles.

The question has arisen in several of the NEOTR states whether a state may adopt California's tailpipe standards without taking the next step and adopting its clean fuel standards too.  To date, New York and Massachusetts have adopted the tailpipe standards without the fuel standards.[2]  New York was promptly sued

---

[2] On the same day that the California standards were approved, the EPA issued a letter to the Commissioners of the New York State Department of Environmental Conservation responding to the Commissioners' question whether New York could adopt the California emissions standards without the California fuel standards.  The EPA advised:

> Section 177 of the Act authorizes eligible states to adopt California new motor vehicle emission standards; there is no explicit requirement in this section, however, that such states also adopt California fuel requirements.  Under section 211(c)(4)(C) of the Act, a state has the authority, for purposes of motor vehicle emission control, to prescribe and enforce a control or prohibition on fuels or fuel additives as part of the state SIP [state implementation plan]; the Administrator may approve such a provision in a SIP, or promulgate a Federal Implementation Plan containing such a provision, only if he finds that the state control or prohibition is necessary to achieve the air quality standard which the plan

(continued...)

by the Motor Vehicle Manufacturers Association in the U.S. District Court for the Northern District of New York. *Motor Vehicle Manufacturers Assn. v. New York State Dept. of Environmental Conservation*, 810 F.Supp. 1331 (1993). New York argued that the Act permits a state to adopt the California tailpipe standards without the fuel standards. Maryland joined with five other NEOTR states in an amicus curiae brief in support of New York's position. This opinion expands upon the position taken by the amici states in that brief.

While this opinion request was pending, the District Court issued its memorandum decision and order on cross motions for summary judgment, agreeing with New York on one issue and with the manufacturers on another. *MVMA v. New York State Dept of Environmental Conservation*, 810 F.Supp. 1331 (1993) (order granting in part, denying in part cross-motions for summary judgment). We analyze the court's ruling in Parts III and IV below.

## II

### State Authority Generally

Prior to 1965, the federal government was given no role in setting automobile emissions standards. Even when the Secretary of Health, Education and Welfare (as the office was then known) was authorized to set national automobile emissions standards, each state was still left free to adopt its own more stringent emission standards. In 1967, in order to protect auto manufacturers from being subjected to a multitude of different standards, Congress enacted a provision that generally pre-empted states from setting their own automobile

---

[2] (...continued)

> implements. Thus, a state could adopt California fuel requirements. Alternatively, a state could opt-in to the Federal reformulated gasoline program. The state's decision on fuel requirements will have an impact on the state's SIP credits.

*See* letter to Commissioner Jorling, New York State Department of Environmental Conservation from William K. Reilly, Director, EPA (January 7, 1993).

emission standards.  Air Quality Act of 1967, Pub. L. No. 90-148, §208(a), 81 Stat. 485 (1967) (currently codified at 42 U.S.C. §7543(a)).  This provision, however, included an exception for the State of California, the only state that at the time had fully developed and implemented an auto emissions program.  The 1967 amendments thus protected the auto manufacturers from facing more than two sets of emission standards − the federal standards and California standards.

In 1977, Congress again amended the Act by adding §177, the provision that allows states the option of adopting the California automobile emission standards in lieu of the less stringent federal standards.  Specifically, §177 as enacted provided that states may adopt standards  "relating to control of emissions" if:

> (1) such standards are identical to the California standards for which a waiver has been granted for such model year, and

> (2) California and such State adopt such standards at least two years before commencement of such model year (as determined by regulations of the [EPA] Administrator).

42 U.S.C. §7507.

Finally, in 1990, two provisions to clarify Congress' intent were added to § 177.  First, Congress provided that states cannot limit the "manufacture or sale of any new motor vehicle ... certified in California as meeting California standards," or do the following:

> [T]ake any action of any kind to create, or have the effect of creating, a motor vehicle or motor vehicle engine different than a motor vehicle or engine certified in California under California standards (a "third vehicle") or otherwise create such a "third vehicle."

42 U.S.C. §7507.[3]

Opponents of the proposal to adopt only the tailpipe standards contend that failure to also adopt the fuel standards as well violates the "identicality" requirement of §177 as originally enacted and potentially results in the creation of a "third vehicle" in violation of the 1990 amendments to §177. As explained below, we disagree with both of these contentions.

## III

### The "Identicality" Requirement

Throughout the Act, Congress has evinced its intent to regulate emission standards for new motor vehicles. If Maryland were to adopt the California LEV standards, we have no doubt that they would be standards "relating to the control of emission from new motor vehicles." If, however, the standards that Maryland adopts are identical to California's, the Act does not pre-empt Maryland from doing so.

The starting point of our analysis is the language of the statute itself. Under §177, States are preempted from adopting standards relating to the control of emissions unless "such standards are *identical to the California standards for which a waiver has been granted.*" 42 U.S.C. §7507 (emphasis added). The language of §177 indicates, then, that the standards which must be identical are the standards for which California must obtain a waiver. As we understand it, the Act does not require California to obtain a waiver for its proposed clean fuels program. 42 U.S.C. §7545(c)(4)(B). Rather, California must obtain a waiver only for the LEV standards. Indeed, California's waiver application recently approved by the EPA did not include the California fuels program. Therefore, the requirements of the California fuels program are not "standards relating to the control of emissions."

---

[3] States adopting California standards do not apply separately for a waiver but instead rely upon EPA's grant to California. Thus, the initial policy decision whether to opt-in is left entirely to the states.

We will not read into the Act language that is simply not there. In a recent preemption decision, *Gregory v. Ashcroft*, 111 S.Ct. 2395 (1991), the Supreme Court adopted a "plain statement" rule designed to preserve a proper balance between federal and state powers. In *Gregory*, the Supreme Court refused to find that a federal statute preempted state law unless Congress had made it clear that such a result was intended. We find that reasoning particularly applicable to this problem. Applying the plain language of §177, Maryland will have emission standards identical to California's if it adopts only California's tailpipe standards.

We note that our analysis of this issue is consistent with that of the Northern District of New York in its memorandum decision granting New York's cross motion for summary judgment on this issue. The federal Court held that as a matter of law, applying the "plain language" of §177, the "identicality" requirement did not require New York to adopt the fuel component of the California program. *See Motor Vehicle Manufacturers Assoc. v. New York State Dept. of Environmental Conservation,* 810 F.Supp. 1331, 1341-43 (1993).

California has approached the motor vehicle standards and fuel standards as an "integrated system" to achieve maximum reduction of motor vehicle emissions. This determination represents a policy decision by the State of California that is not required as a matter of law for other states. Indeed, California is the only state that does not need a waiver to adopt fuel standards. The Act provides a separate procedure for states other than California to regulate fuels. States cannot regulate fuel components or characteristics where EPA has already regulated or where EPA determines such regulations are not necessary to achieve the NAAQS. 42 U.S.C. §7545(c)(4)(C); *American Petroleum Institute v. Jorling*, 710 F.Supp. 421, 429-31 (N.D.N.Y. 1989).

Finally, while California has chosen to adopt an integrated fuel and tailpipe standard, the fuel requirement is not essential to the LEV standards. In fact, as we understand it, in California, certain reformulated gasoline will not be required until March 1, 1996, although vehicles certified to LEV standards will already be on the road. Additionally, we understand that California has authorized manufacturers to certify LEV vehicles by fueling them *either* with a product (called Indolene) that is not commercially available but is

used in current motor vehicle certification practices *or* with gasoline reformulated to meet the clean fuels standard.[4]   In other words, California's fuel requirements are complementary to the emissions requirements but not essential for compliance with them.

## IV

### The No "Third Vehicle" Requirement

The 1990 amendment to §177 prohibits states from taking any action under that section that would have the result of requiring a "third vehicle."  According to the legislative history, this provision was enacted "to make plain that States exercising th[e] Section 177 option may not, in such adoption and enforcement, create a 'third vehicles' [sic] that is not a California vehicle or a 49-state Federal vehicles [sic], because of the burden it would place on the motor vehicle manufacturers."  Summary of Conference Agreement on S.1630, H.R. Conf. Rep. No. 101-952, 101st Cong., 2d Sess. 337 *reprinted in* 1990 U.S. Code Cong.

---

[4] Certification requirements for new motor vehicles or new motor vehicle engines are established in 42 U.S.C. §7525.  Under that section, certification involves the testing of prototype vehicles made available by the manufacturers to the EPA.  The certification fuel, Indolene, is not commercially available. *See* 40 C.F.R. 86.113-82 through 86.113-84.  As we understand it, compliance with emission standards is determined by testing during which the test vehicles use the certification fuel.  Thus, a motor vehicle ordinarily may be certified with fuel not commercially available. *See Motor Vehicle Manufacturers Association v. New York State Department of Environmental Conservation*, 810 F.Supp. 1331, 1337 (1993).

After the vehicles for a given model year have been sold to the public, the EPA obtains a sample of "in use" vehicles and conducts tests similar to the certification testing.  If, based upon the results of this "in use" testing, the Administrator of the EPA determines that a class of vehicles does not conform to the vehicle emission standards, the Administrator may order a recall of such vehicles at the manufacturers expense.  42 U.S.C. 7541(c).

& Admin. News 3867, 3869.  One of the bill's proponents, Senator Baucus, submitted for the record the "Clean Air Conference Report" with the following explanation:[5]

> The new language placed in Section 177 by the Conference neither adds to nor detracts from the present authority of states under Section 177 to adopt, administer and enforce motor vehicle standards that are identical to those adopted by the state of California.  The new language simply codifies, in effect, Congress' understanding of the authority originally to states by Section 177 as expressed in the legislative history of Section 177 when it was adopted in 1977.

Senator Baucus continued:

> The authority enacted in 1977 prevents opt-in states from imposing different emission requirements on new vehicles and engines that would place an undue burden on manufacturers by requiring them to produce materially different new vehicles for sale in such areas.
>
> *     *     *
>
> It is vital to note that this "undue burden" standard − which was established by the legislative history in 1977 and which we reaffirm in this Act − for determining what is and is not a third vehicle" does not require

---

[5] It appears that this *Congressional Record* version is the full text of H.R. Conf. Rep. No. 101-952, 101st Cong. 2d Sess., which is printed in summary form only in 1990 U.S. Code Cong. & Admin. News 3867.

physical identicality of vehicles.[6]

The report continued:

> I [Senator Baucus] understand that the requirement to make small modifications in vehicles in use to assure their continuing compliance with their certified emission limits is entirely consistent with the auto makers' present manufacturing practice. So-called "running changes" are made in the emissions equipment placed on vehicles in production without any changes being made in the vehicles' existing emissions certificate. The running changes are made to assure that those vehicles comply with their certificates. Thus, physical differences in emissions equipment under a single certificate are even now being made by the auto manufacturers without anyone having contended that this creates a "third vehicle."

136 Cong. Rec. S16933, 16976 (daily ed. October 27, 1990).

This legislative history clarifies what would otherwise be an ambiguous provision. As we see it, the legal issue under the "third

---

[6] The 1977 legislative history referred to provides:

> This new State authority should not place an undue burden on vehicle manufacturers who will be required, in any event, to produce vehicles meeting the California standards for sale in California. The provision is not intended to allow States, other than California, to require additional new vehicle certification testing or enforcement procedures since such testing and enforcement will be conducted under Federal and California laws.

H.R. Rep. No. 294, 95th Cong. 1st Sess., *reprinted in* 1977 U.S. Code Cong. & Admin. News 1077, 1390.

vehicle" amendment is whether a state's requirements result in an "undue burden" on the manufacturers.

We recognize that in the New York case discussed above, the federal court granted the auto manufacturers' motion for summary judgment as to the allegation that New York's adoption of tailpipe standards without clean fuel requirements violates the "third vehicle" prohibition. The court's conclusion is based on certain factual findings about the high sulfur content of gasoline commonly available in New York and the fuel's potential effect on vehicle catalytic converters. The federal court seemingly determined that, as a matter of law, any mechanical differences in an emissions system equates to a third vehicle in violation of §177.[7] This approach misconstrues the law. The test is not whether mechanical differences are required but, rather, whether any required mechanical differences impose an undue burden on manufacturers. The federal court's ruling, in our opinion, seems to disregard the fact that, as the legislative history makes clear, physical identicality is not required, and slight variations in mechanical design may be permissible so long as they do not unduly burden manufacturers.

The question whether a Maryland program will violate the "third vehicle" prohibition is not one that can be answered in the abstract in advance. Rather, whether a program crosses the "undue burden" line drawn by Congress depends on the particulars of the program, which have not been finally determined. That is to say, the question whether Maryland's plan violates the third vehicle prohibition is ultimately not a legal one, but a factual one based on the plan as adopted.

As we understand the program being considered, however, Maryland will not be conducting its own certification of motor vehicles but will rely entirely on California's certification program. Under the California regulations, a manufacturer may choose to certify vehicles using clean fuels. Under Maryland's proposal, the clean-fuel certified vehicles would then be deemed as certified for sale in Maryland regardless of whether the same clean fuel is

---

[7] The federal court first addressed whether the high sulfur content placed manufacturers in jeopardy of failing recall tests. Because recall testing is conducted with clean fuel, the federal court answered that question in the negative.

available in Maryland. (Presumably most vehicles that would be certified with clean fuels can operate with conventional fuels.) Thus, Maryland vehicles do not appear to be at risk of failing recall tests. Additionally, in the absence of any factual showing of "undue burden" on the manufacturers caused by potential manufacturing differences in emissions systems, the proposal does not appear to require the creation of a third type of vehicle and, therefore, does not violate the Act.

## IV

## Conclusion

In summary, it is our opinion that Maryland may adopt the California LEV standards without adopting the California clean fuel standards.

J. Joseph Curran, Jr.
*Attorney General*

Mary O'Malley Lunden
*Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
  *Opinions & Advice*